UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JON R. BROWN,

        Plaintiff,

        v.

CITY OF SALEM, an Oregon
municipal corporation,

        Defendant.

Civil No. 04-1541-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

This case is brought by Jon R. Brown (plaintiff), a former employee of the City of Salem

(defendant). Plaintiff asserts that his termination from employment with defendant violated the

Americans with Disabilities Act (ADA). Plaintiff also alleged initially a claim for retaliation

under 42 U.S.C. § 1983 and a claim under the Family Medical Leave Act (FMLA), 28 U.S.C. §

Page 1    OPINION AND ORDER

2611, *et seq.* However, after defendant sought summary judgment on each of plaintiff's claims,

plaintiff filed a formal Response to the summary judgment motion that failed to address the

possible merits of either his retaliation claim or the FMLA claim. Accordingly, those claims are

deemed waived and the summary judgment motion is directed solely against plaintiff's ADA

claim. Oral argument on that motion was heard on February 12, 2007. For the following

reasons, defendants' Motion for Summary Judgment [43] is denied as to plaintiff's ADA claim,

and granted as to plaintiff's other, now waived, claims.

**BACKGROUND**

Plaintiff served as an Emergency Dispatch Operator for defendant City of Salem for

almost twenty-five years, from 1979 until his termination in 2003. Plaintiff was diagnosed with

sleep apnea and restless leg syndrome. As a symptom of these disorders, plaintiff falls asleep

involuntarily for brief periods. These are referred to as micro-sleeps.

Plaintiff alleges that during his employment with defendant he sought accommodation

from defendant regarding this problem. Plaintiff acknowledges that defendant was at first

cooperative in the interactive process of finding a reasonable accommodation. For example,

defendant excused plaintiff from night duty, and in February 2002, defendant agreed to provide

either a cooling collar or a portable fan after plaintiff and his physician concluded that high

temperatures in the workplace might trigger micro-sleeps. Plaintiff chose the fan.

Plaintiff used the fan provided by his employer during 2002, but alleges that he informed

defendant that the fan failed to alleviate plaintiff's symptoms. In March 2003, plaintiff

experienced micro-sleeps while on duty. Plaintiff was terminated subsequently, at least in part

because of these incidents.  Plaintiff argues that his termination was based upon the occurrence

of symptoms of his disability, and so was in violation of the ADA.

Defendant's version of the facts differs.  Defendant contends that after plaintiff opted to

use the fan defendant provided, plaintiff did not request any subsequent accommodation.  Only

after he was disciplined and terminated for sleeping on the job did plaintiff allege that the fan

was ineffective.  Prior to being disciplined, plaintiff never requested further accommodation.

Defendant also asserts that plaintiff was subjected to discipline for performance issues on

several occasions during his career.  In late 2002, defendant received complaints alleging that

plaintiff was engaged in conduct which constituted dereliction of duty.  Plaintiff allegedly

missed several calls, broke protocol on call-outs for tow vehicles, and was not timely in

responding to calls.  Defendant investigated the complaints, substantiated them, and disciplined

plaintiff.  Plaintiff was given remedial instructions and was required to pay attention to his duty

and not engage in activities unrelated to his position.

Defendant contends that notwithstanding these instructions, plaintiff continued to behave

in a manner inconsistent with his duties.  On one occasion plaintiff was discovered away from

his work station and helping another employee with personal tax forms.  In another instance

plaintiff was found reading a newspaper instead of monitoring his post.

Plaintiff was reprimanded for this conduct and instructed to focus on his job.  He was

further instructed that he could no longer read non-work-related materials at his post.  Defendant

asserts that notwithstanding the reprimands, counseling, and remedial instruction, plaintiff

continued to behave in manners contrary to his duties as a dispatch officer.

On March 24, 2003, plaintiff's supervisor found him sleeping on the job. While defendant was investigating that incident, plaintiff was again found sleeping on the job. Plaintiff was suspended and defendant initiated the disciplinary process of termination.

On May 5, 2003, defendant met with plaintiff and his union representative and outlined the charges against plaintiff. Plaintiff was allowed an opportunity to provide evidence as to why he should not be terminated. Plaintiff offered no evidence to mitigate his conduct.

Subsequent to the meeting, plaintiff provided notice from his doctor that suggested that his sleeping on the job was a result of an imbalance in his medication. Defendant decided to terminate plaintiff's employment.

Plaintiff was advised to attend a meeting with his supervisors on May 19, 2003. Plaintiff was unable to attend and, as a consequence, defendant resorted to sending a letter to plaintiff that his employment was terminated as of May 19, 2003. Plaintiff did not file a grievance of his termination pursuant to the Collective Bargaining Agreement.

**PENDING MOTION**

In light of plaintiff's waiver of his other claims, the remaining issue is whether defendant is entitled to summary judgment on plaintiff's ADA claim. Defendant concedes for the purposes of this motion that plaintiff could be construed as a qualified individual with a disability under the ADA and that plaintiff sought some accommodation from defendant, albeit infrequently, for his disability of sleep apnea. Defendant assumes, for purposes of this summary judgment motion only, that: (1) plaintiff has sleep apnea; (2) sleep apnea is a disability under applicable laws; and (3) that plaintiff is otherwise qualified for the position from which he was terminated.

Because it is unnecessary for this court to address these issues in deciding this motion for summary judgment, the court expresses no opinion as to the correctness of these assumptions. Nevertheless, defendant seeks summary judgment on grounds that plaintiff cannot demonstrate as a matter of law that: (1) defendant failed to provide plaintiff with reasonable accommodations upon request; and (2) plaintiff's disability was a substantial motivating factor in his termination. Df.'s Memorandum in Supp. of the Mot. for Summ. J. at 10.

## STANDARDS

### 1.    Summary Judgment

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c); *see Bahn v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).  The moving party carries the initial burden of proof and meets this burden by identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  Once the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried.  *Id.*

The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party.  *MetroPCS, Inc. v. City and Co. of San Francisco*, 400 F.3d 715, 720 (9th Cir. 2005) (citation omitted).  Where different ultimate inferences may be drawn, summary judgment

is inappropriate.  *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed. R. Civ. P. 56(c)).

Deference to the non-moving party has limits.  The non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The "mere existence of a scintilla of evidence in support of the [non-moving party's] position would be insufficient."  *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 252 (1986).  Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

However, the Ninth Circuit has reasoned that courts should require very little evidence to survive summary judgment in an employment discrimination case, because the ultimate question is one that is most appropriately conducted by the fact-finder, upon a full record.  *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996).

**2.      Disability Discrimination**

The ADA prohibits discrimination by certain entities, including private employers, against qualified individuals with a disability and, in some cases, against persons perceived to be disabled.  Specifically, it provides that no employer falling within the scope of the ADA "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. §§ 12112(a); *see also* 42 U.S.C. § 12111(5) (defining employer).

The Ninth Circuit analyzes ADA cases using the framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 (2003). As set out under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination.

To establish a *prima facie* case of discrimination in violation of the ADA by an employer, a plaintiff must prove: 1) that he or she is a qualified individual with a disability; 2) that he or she has suffered an adverse employment action; and 3) that a causal connection exists between the adverse employment action and the disability. *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001); *see also Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996). The requisite degree of proof necessary to establish a *prima facie* case of discrimination on summary judgment "is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

A "qualified individual with a disability" is identified as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA defines an individual with a disability as someone who: (1) has a physical or mental impairment that substantially limits one or more of the individual's major life activities; (2) has a record of the impairment; or (3) is regarded as having an impairment. 42 U.S.C. § 12102(2)(A).

Once a *prima facie* case is presented by a plaintiff, the burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. The plaintiff is then afforded an opportunity to demonstrate that the employer's proffered reason was pretextual, "either directly by persuading the court that a discriminatory reason more

Page 7     OPINION AND ORDER

likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

## ANALYSIS

As noted, for the purposes of this motion, defendant concedes that plaintiff is a qualified individual with a disability under the ADA.  There is no dispute that plaintiff suffered an adverse employment action.  Accordingly, plaintiff's efforts to establish a *prima facie* ADA claim requires only meeting the third element described above:  showing that there is a causal connection between the adverse employment action and the disability.

This court concludes that plaintiff has presented an adequate *prima facie* claim.  The evidence presented suggests a likelihood that incidents of plaintiff sleeping on the job, otherwise referred to as micro-sleeps, were related to plaintiff's disability and played a role in defendant's decision to terminate plaintiff.  Plaintiff presents evidence that defendant knew the micro-sleeps were connected to plaintiff's sleep apnea prior to defendant's pre-disciplinary meeting, including a disciplinary report from 1994 referring to micro-sleeps and plaintiff's medications, as well as deposition testimony from defendant's managers.

The Human Resources Director testified:

**Q.  Okay.  So is it fair to say for at least a decade, if not more, you had been involved with the accommodation process for Mr. Brown's sleep apnea?**

**A.  Yes.**

**Q.  And when the -- the issue of Mr. Brown's termination came across your desk you didn't consider that there was any connection between the misconduct and/or performance issues and sleep apnea?**

Page 8     OPINION AND ORDER

**A.  There were a number of performance issues that came across my desk that were not --**

**in my opinion that were not related to sleep apnea.  There were issues -- there were several**

**performance issues that apparently he fell asleep at his desk that could have, I suppose,**

**been sleep apnea related.  But, once again, I don't know if that's the case because I'm not a**

**medical doctor.**

Munnell Depo. 29:18-30:13.

Plaintiff's manager, Teri White, who investigated and recommended termination, testified

at deposition as follows:

**Q.  And did you take into consideration Mr. Brown's physical limitations when issuing**

**disciplinary action?**

**A.  I was aware of it. And depending upon the investigation, perhaps.**

**Q.  I'll ask you to clarify that answer.  I'm not sure what "perhaps" means in this context.**

**A.  I was only aware of one physical disability or impairment that Mr. Brown has or had.**

**Q.  And what disability was that?**

**A.  The sleep apnea.**

**Q.  And how did that bear on your decision-making as to discipline?**

**A.  The only investigations that came into consideration were those in which he was**

**sleeping on duty.**

White Depo. 29:22-31:6.

Susan Hurley, plaintiff's direct supervisor who drafted his termination letter, testified:

**Q.  How about relating to his falling asleep . . .  on the job, did that ring a bell that perhaps**

**there might be something associated with his sleep apnea that might be related?**

Page 9    OPINION AND ORDER

**A.  That might be related?  Yes.**

**Q.  And did you follow up on that?**

**A.  Meaning, did I ask him?  I'm not sure how you mean, did I follow up.**

**Q.  Did you follow up in any way, ask him, ask a supervisor, ask a doctor, ask personnel, ask anyone about the connection between his falling asleep and the sleep apnea which you knew he suffered from?**

**A.  Yes.**

**Q.  What did you do?**

**A.  I contacted the personnel or human resources department.**

**Q.  What were your concerns, then, at that point that you expressed to [the human resources department]?**

**A.  That he had been diagnosed with sleep apnea and could it be a contributing factor.**

Hurley Depo. 27:3-28:16.

Accordingly, it is evident that plaintiff has established a causal connection between the adverse employment action and his disability.  Therefore, based upon defendant's concessions and the testimony of its managers, this court must conclude that plaintiff has presented a *prima facie* case of disability discrimination under the ADA.

The court rejects defendant's contention that plaintiff's ADA claim must fail as a matter of law because plaintiff cannot demonstrate that (1) that plaintiff's disability was a substantial motivating factor in his termination or (2) that defendant failed to provide plaintiff with reasonable accommodations.  Defendant's summary judgment motion depends upon whether

there are triable issues of fact regarding whether plaintiff's termination may have been "because

of" his disability.  Such issues of fact exist.

Defendant disputes that there is any competent evidence that the two incidents of plaintiff

sleeping on the job were related to his disability in any way.  Despite this challenge to the scope

and quality of plaintiff's evidence, there can be little doubt that there are at least questions of fact

as to whether plaintiff's disability of sleep apnea, which was known and acknowledged by his

employer, was related to his being discovered sleeping on the job.  The testimony of defendant's

managers, reprinted above, suggests at least as much.  For purposes of resolving the summary

judgment motion, it is plain that plaintiff's managers and supervisors acknowledged that he

suffered from sleep apnea, and considered the possibility that his sleeping on the job was related

to that disability.  Moreover, defendant has acknowledged for the purposes of this motion that

plaintiff is disabled and suffers from sleep apnea.  It is disingenuous to contend despite these

concessions that there is no evidence that plaintiff's sleeping on the job is related to his disability,

and defendant's challenge of plaintiff's evidence is rejected.

Alternatively, defendant asserts that the position of 911 Call Dispatcher requires strict

attention to duty in order to ensure the safety of the public, and that in light of plaintiff's

inattention to duty, failure to follow instructions, and his sleeping on the job, defendant was

compelled to terminate plaintiff's employment.  It is true that the ADA does not require that an

employer abandon appropriate employee discipline, up to and including termination, because an

employee requests an accommodation after the fact.  *Kiel v. Select Artificials, Inc.*, 169 F.3d

1131, 1136 (8th Cir. 1999) (anti-discrimination statutes do not insulate an employee from being

disciplined for violating an employer's rules or disrupting the workplace).

However, it is uncontroverted that plaintiff was fired at least in part for falling asleep on the job. Defendant acknowledges that plaintiff suffers from a disability for which this conduct is a symptom. The Ninth Circuit has ruled that termination for disability symptoms is disability discrimination: "with few exceptions, conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination." *Dark v. Curry Co.*, 451 F.3d 1078, 1084 (9th Cir. 2006) (citing *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139-40 (9th Cir. 2001)). Under *Dark* and *Humphrey*, it is plain that conduct resulting from the disability is considered to be part of the disability and that termination based on that conduct is unlawful.

A careful comparison of the facts presented in the *Dark* ruling is warranted. The plaintiff Dark suffered from epilepsy. His employment required operation of heavy equipment, including construction vehicles. Dark's employment record over approximately sixteen years reflected satisfactory job performance. On January 15, 2002, Dark experienced an aura, a physical manifestation that sometimes served as a forewarning that he would soon experience an epileptic seizure. Despite this forewarning, Dark reported for work and failed to inform anyone of any possible risk. Later that day, Dark suffered a seizure and fell unconscious while driving for his employer. In response to this incident, his employer requested that Dark undergo a medical examination, and placed him on administrative leave. He was terminated after admitting at a disciplinary hearing that he experienced an aura on the morning of the incident.

His employer reasoned that Dark could not perform the essential functions and duties of his position and that his continued employment posed a threat to the safety of others. An administrative appeals board concluded that Dark had "acted irresponsibly, recklessly, and with

a total disregard of the safety of himself, other employees, and members of the public." *Dark*,

451 F.3d at 1083.

His employer argued that Dark engaged in misconduct by driving with knowledge of the

risk he posed, and without warning any coworkers of the danger he presented.  The Ninth Circuit

held that, nevertheless, "the reason given for Dark's termination must actually constitute a valid

nondiscriminatory explanation, *i.e.*, one that disclaims any reliance on the employee's disability

in having taken the employment action."  *Dark*, 451 F.3d at 1084 (internal quotation and citation

omitted).  The Ninth Circuit ruled in pertinent part:

> While courts have indeed "recognized a distinction between
> termination of employment because of misconduct and termination
> of employment because of a disability," *Collings v. Longview
> Fibre Co.*, 63 F.3d 828, 832 (9th Cir. 1995) (citation omitted),
> there is an important caveat. "[W]ith few exceptions, conduct
> resulting from a disability is considered to be part of the disability,
> rather than a separate basis for termination." *Humphrey v. Mem'l
> Hosps. Ass'n*, 239 F.3d 1128, 1139-40 (9th Cir. 2001).  The
> [employer] does not argue that Dark's "misconduct" resulted from
> other than his disability.  Thus, the [administrative appeals board's]
> explanation, as a matter of law, fails to qualify as a legitimate,
> nondiscriminatory explanation for Dark's discharge.

*Id*. (footnotes omitted).

The Ninth Circuit disregarded the employer's reasoning that Dark's misconduct "stemmed

from his failure to take proper precautions in light of his disability," in part because an employer

could just as easily assert that an employee's excessive absenteeism was caused by the

employee's failure to arrive at work and not because of migraine headaches or regardless of an

obsessive compulsive disorder.  *Dark*, 451 F.3d at 1084, n.4 (citing *Humphrey*, 239 F.3d at 1140;

*Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 875 (9th Cir.1989)).

The Ninth Circuit concluded that causation for ADA purposes "is a factual inquiry, and we are satisfied that there is record evidence sufficient that a jury could reasonably find that Dark was terminated for an impermissible reason." *Id*. at 1085.  The court concluded that this gave rise to a "genuine issue of material fact as to whether Dark's disability was a motivating factor for his termination." *Id*.

There are significant similarities between the *Dark* case and the facts alleged here.  In both cases the plaintiffs were recognized by their employers as disabled.  Both employers attempted to explain the termination of their employee as being based upon misconduct, and not related to the plaintiff's disability.

There are some significant differences, too.  Dark was considered a good employee with a satisfactory employment record.  Plaintiff here was, on several occasions, subjected to discipline for performance issues.  Defendant alleges that notwithstanding reprimands and remedial instructions, plaintiff continued to engage in behavior contrary to his duties as a dispatch officer.

While Dark's employer did not argue that Dark's "misconduct" resulted from sources other than his disability, defendant in this case refers to a record of repeated problems with plaintiff's job performance prior to defendant finally initiating the disciplinary process of terminating plaintiff after finding him asleep on the job.  However, defendant cannot plausibly deny that there is evidence suggesting that plaintiff's sleeping was a significant reason for his termination.  It is also implausible to deny that the "misconduct" of sleeping on the job could stem from the disability of sleep apnea.

Page 14    OPINION AND ORDER

Defendant's reliance upon the existence of instances of misconduct possibly unrelated to plaintiff's disability, and for which plaintiff could have been terminated, fails to compel summary judgment.  The Ninth Circuit rejected similar arguments in *Dark*.  In that case the Ninth Circuit disregarded the employer's attempt to rationalize Dark's termination as being based upon "misconduct" and not directly related to his disability:

> But the ADA does not require that a discriminatory impetus have been the only motive for an adverse employment action.  Rather, the ADA outlaws adverse employment decisions motivated, even in part, by animus based on a plaintiff's disability or request for an accommodation – a motivating factor standard.

*Id*. at 1084-85 (emphases, internal quotations and citations omitted).

The Ninth Circuit went on to conclude that even if Dark's employer had presented a legitimate explanation for Dark's termination, the record was "replete with evidence suggesting that 'misconduct' was a pretext for discrimination on the basis of disability."  *Id*. at 1085.  The termination documents revealed that the employer was concerned that allowing Dark to continue working could impose a direct threat to the safety and lives of fellow employees and other members of the public.  The court viewed this evidence as exhibiting a concern with Dark's "future ability, given his epileptic condition, to perform safely the essential functions of his job," which constituted "substantial evidence suggesting that the 'misconduct' rationale is pretext":

> Given the ADA's standard of causation and a plaintiff's opportunity to show pretext, it is clear that a rationale developed *ex post* by a reviewing body cannot wipe away the original discriminatory justification for an employee's termination.  *See, e.g., Hernandez v. Hughes Missile Systems Co.*, 362 F.3d 564, 569 (9th Cir. 2004) ("From the fact that [the employer] has provided conflicting explanations of its conduct, a jury could reasonably conclude that its most recent explanation was pretextual." (citations omitted)).

*Id.* at 1086.

The same is true here.  Defendant presents valid concerns about the risks to the public posed by plaintiff's continued employment.  However, evidence that defendant may have based its decision to terminate plaintiff at least in part upon discriminatory reasons cannot be disregarded because of the presence of conflicting evidence regarding more laudatory motives.  As noted above, the Ninth Circuit concluded in *Dark* that causation under the ADA is a factual inquiry, and the court was satisfied that the evidence was sufficient to allow a reasonable jury to find that Dark was terminated for an impermissible reason.  *Id.* at 1085.  Again, the same is true here.

Defendant's reliance upon the decision in *Brohm v. JH Props., Inc.*, 947 F. Supp. 299, 301-02 (W.D. Ky. 1996), is flawed.  In that decision the Western District of Kentucky held that a doctor with sleep apnea was fired "for his specific conduct – sleeping on the job – and not because of a disability manifested by the sleeping," and so granted summary judgment to the doctor's employer regarding the doctor's ADA claim.  *Id.* at 300.

The facts presented in *Brohm* reveal that the employer had been investigating complaints against the doctor, including allegations that he slept during surgical procedures, before the doctor – at an administrative meeting at which he was suspended – suggested that he might suffer from sleep apnea.  *Id.* at 299-300.  The doctor was fired the next day, and later that week visited a physician and obtained a diagnosis of sleep apnea.  *Id.* at 300.

In the facts presented here, however, plaintiff's sleep apnea was known to his employer years before his termination, and there is no dispute that attempts to accommodate the disability were made.  The Ninth Circuit's guidance from *Dark*, which cautions that conduct resulting from

Page 16    OPINION AND ORDER

a disability is considered to be part of the disability, supercedes the reasoning presented in *Brohm* that addresses a factually distinct situation.

While denying defendant's motion for summary judgment, this court acknowledges that the ADA does allow for exceptions, and explicitly authorizes some disability-related discharges involving alcoholism and illegal drug use. *See* 42 U.S.C. § 12114(c)(4). Additionally, the Ninth Circuit has suggested that an additional exception might apply regarding disability-related discharges for "egregious and criminal conduct." *Dark*, at 1084, n.3 (citing *Newland v. Dalton*, 81 F.3d 904 (9th Cir. 1996)). These exceptions are inapplicable under the facts presented in this case.

Similarly, the Ninth Circuit has also recognized a distinction between termination of employment because of misconduct and termination of employment because of a disability. *See Collings*, 63 F.3d at 832. Firings precipitated by misconduct rather than any handicap do not violate the ADA. *See Newland*, 81 F.3d at 906.

It appears beyond dispute that plaintiff engaged in unacceptable and dangerous behavior by sleeping on the job in his position as a 911 dispatcher. Defendant argues, in part, that this (and other) misconduct was the basis for plaintiff's termination, and the fact that he suffers from a disability does not insulate him from appropriate discipline for misconduct. However, the reasoning provided by *Dark* establishes that evidence that an employer may have classified a symptom of a disability as misconduct, or may have attempted to excuse one improper motive for termination because there are several other proper motives, precludes granting summary judgment to that employer after an employee has presented a *prima facie* claim for ADA discrimination.

Page 17    OPINION AND ORDER

**CONCLUSION**

Plaintiff's Motion to Strike [60] is denied.  Defendant's Motion to Amend/Correct

Defendant's Concise Statement of Material Fact [62] is granted.

On the merits presented by defendant in its Motion for Summary Judgment [43], and

alternatively because plaintiff has waived opposition to those portions of defendant's Motion,

summary judgment is granted as to plaintiff's First Amendment Claim and Family Medical

Leave Act Claim.  For the reasons provided above, however, defendant's Motion [43] is denied

as to plaintiff's ADA claim.

IT IS SO ORDERED.

DATED this  27   day of February, 2007.


                                                         /s/ Ancer L. Haggerty
                                                        Ancer L. Haggerty
                                                        United States District Judge